## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CARLOS A. ACOSTA; ANGELA P. ACOSTA; and REPAINTEX COMPANY, <br><br> Defendants. | Civil Action No.  1:24-cv-01876 |

### COMPLAINT

Plaintiff, Travelers Casualty and Surety Company of America, by and through its undersigned counsel, files the instant Complaint against Defendants Carlos A. Acosta, Angela P. Acosta, and Repaintex Company (collectively, "Indemnitors" or "Defendants") and states:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction under the provisions of 28 U.S.C. § 1332 because complete diversity exists between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2.     Venue is proper in this Judicial District and Division pursuant to 28 U.S.C. § 1391 in that the claims for relief herein alleged arise from and relate to the breach and enforcement of a contract of indemnity that was executed by the Defendants in Loudoun County, Virginia.

### THE PARTIES

3.     Travelers Casualty and Surety Company of America ("Travelers") is, and at all times mentioned herein was, a corporation organized under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.  Travelers is engaged in the business

of, among other things, underwriting surety bonds for the construction industry.

       4.      Upon information and belief, Defendant Carlos A. Acosta is a resident of the State of Florida.  Carlos A. Acosta is a personal indemnitor under a General Agreement of Indemnity in favor of Travelers that is addressed below.

       5.      Upon information and belief, Defendant Angela P. Acosta is a resident of the State of Florida.  Angela P. Acosta is also a personal indemnitor under a General Agreement of Indemnity in favor of Travelers that is addressed below.

       6.      Repaintex Company ("Repaintex") is a corporation organized under the laws of the Commonwealth of Virginia with its principal place of business at 722 E Market Street, Suite 102, Leesburg, Virginia 20176.  Upon information and belief, Repaintex's prior principal place of business was 116H Edwards Ferry Road, Leesburg, Virginia 20176.  Repaintex is a corporate indemnitor under a General Agreement of Indemnity in favor of Travelers that is addressed below.

## FACTS AND BACKGROUND

**I.**      **The Indemnity Agreement Executed by the Defendants**

       7.      On or about October 10, 2015, Defendants Carlos A. Acosta and Angela P. Acosta, each individually, as well as Carols A. Acosta in his capacity as President of Repaintex executed a General Agreement of Indemnity ("Indemnity Agreement" or "GAI") in favor of Travelers.  A true and correct copy of the Indemnity Agreement is attached hereto as **Exhibit A** and is incorporated herein by reference as if set forth in full.

       8.      Upon information and belief, Carlos A. Acosta was, or is, an officer and director of Repaintex.

       9.      Upon information and belief, Angela P. Acosta was, or is, an officer and/or director of Repaintex.

10. Each of the Defendants are among the "**Indemnitors**" of the Indemnity Agreement, which is a term defined as "[u]ndersigned, all new indemnitors added to this Agreement by rider, their present and future direct and indirect subsidiaries, affiliates, and parent companies, and all of their successors and assigns, and any joint venture, co-venture, consortium, partnership, trust, association, limited liability company or other legal entity in which one or more of them are involved, whether in existence now or formed or acquired hereafter, and any entity that obtains Bonds from [Travelers] at the request of any of the aforementioned parties, or any combination of the above." (Ex. A, ¶ 1).

11. The Indemnity Agreement further defines Travelers and "St. Paul Fire and Marine Insurance Company, any of their present or future direct or indirect parent companies, any of the respective present or future or indirect affiliates or subsidiaries of such companies and parent companies, and/or any of the aforementioned entities' successors or assigns" as "**Company**." (Ex. A, ¶ 1).

12. The Indemnity Agreement expressly binds the Defendants, "jointly and severally," to Travelers, "as an inducement to [Travelers] and in consideration of [Travelers'] execution and/or delivery of one or more Bonds, refraining from canceling one or more Bonds, and/or assumption of obligations by [Travelers] of one or more Bonds …" (Ex. A, "THEREFORE" clause; *see also* Ex. A, ¶ 7).

13. The Indemnity Agreement defines "**Bonds**" as

> Any and all bonds, undertakings, guarantees, contractual obligations, and writings or statements of prequalification or commitment, including Modifications thereof, which [Travelers] has executed or procured, or for which [Travelers] has an obligation as a result of an asset purchase, acquisition, merger or like transaction, issued for on behalf of: (a) any one or more of the Indemnitors (without regard to whether any such Indemnitor signed this Agreement), their respective present or future direct or indirect

3

companies, subsidiaries and affiliates and all of their respective successors and assigns; (b) any present or future joint venture, co-venture, consortium, partnership, trust, association, limited liability company or other legal entity in which one or more of the persons or entities identified in sub-paragraph (a) above have an interest; (c) any other person or entity at the request of any of the Indemnitors; or (d) any combination of the above, whether executed or procured before, on, or after the execution of this Agreement.  For the purpose of this definition, "Modifications" shall include but not be limited to renewals, substitutions, riders, endorsements, reinstatements, replacements, increases or decreases in penal sum, continuations, and extensions.

(Ex. A, ¶ 1).

14.    Under paragraph 3 titled "**Indemnification and Hold Harmless**," the Defendants, each as an "**Indemnitor**", agreed to satisfy certain obligations, including the obligations to indemnify, keep indemnified, exonerate, and hold Travelers harmless from all Loss incurred by reason of or in connection with Travelers issuing Bonds under the Indemnity Agreement: "Indemnitors shall exonerate, indemnify and save [Travelers] harmless from and against all Loss." (Ex. A, ¶ 3).

15.    Further, the Indemnitors' duty under Paragraph 3 to exonerate, indemnify, and hold Travelers harmless includes the obligation under Paragraph 5 to post collateral security with Travelers upon demand:

Indemnitors agree to deposit with [Travelers], upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss.  Indemnitors further agree to deposit with [Travelers], upon demand, an amount equal to the value of any assets or Contract funds improperly diverted by any Indemnitors. Sums deposited with [Travelers] pursuant to this paragraph may be used by [Travelers] to pay such claim or be held by [Travelers] as collateral security against any Loss or unpaid premium on any Bond.  [Travelers] shall have no duty to invest, or provide interest on the deposit.  ***Indemnitors agree that [Travelers] would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph.***

(Ex. A, ¶ 5 (emphasis added)).

16. The Indemnity Agreement defines "**Loss**" as

> All loss and expense of any kind or nature, including attorneys' and other professional fees, which [Travelers] incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of [Travelers']: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate.

(Ex. A, ¶ 1).

17. Regarding claims, demands, suits or judgments against the bonds issued by Travelers, Defendants, each as an Indemnitors, jointly and severally agreed that Travelers "shall have the right in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against [Travelers] or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors.  [Travelers] shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments."  (Ex. A, ¶ 4).

18. As proof of Defendants' liability to Travelers under the Indemnity Agreement as a result of payments made by Travelers in connection with any bonds, "[a]n itemized, sworn statement by an employee of [Travelers], or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability.  Amounts due to [Travelers] shall be payable upon demand."  (Ex. A, ¶ 3).

19. The Indemnitors further agreed in Paragraph 10 of the Indemnity Agreement,

entitled "**Books, Records and Credit**," that Travelers shall have access to the Indemnitors' financial books and records:

> Indemnitors shall furnish upon demand, and [Travelers] shall have the right of free access to, at reasonable times, the records of Indemnitors including but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them.  Indemnitors expressly authorize [Travelers] to access their credit records, including, but not limited to, account numbers and/or account balances from financial institutions. …

(Ex. A, ¶ 10).

20.    The Indemnitors also further agreed that Travelers is entitled to the following additional rights and remedies:

> In the event of a Default, Indemnitors assign, convey and transfer to [Travelers] all of their rights, title and interests in Property, and [Travelers] shall have a right in its sole discretion to: (a) take possession of the work under any Contract and to complete said Contract, or cause, or consent to, the completion thereof; (b) immediately take possession of Indemnitors' Property, and utilize the Property for the completion of the work under the Contracts without payment for such use; (c) assert or prosecute any right or claim in the name of any Indemnitor and to settle any such right or claim as [Travelers] sees fit; (d) execute in the name of any Indemnitor, any instruments deemed necessary or desirable by [Travelers] to: (i) provide [Travelers] with title to assets, (ii) take immediate possession of Contract funds whether earned or unearned, (iii) collect such sums as may be due Indemnitors and to endorse in the name of Indemnitors, and (iv) collect on any negotiable instruments; (e) require any Obligee to withhold payment of Contract funds unless and until [Travelers] consents to its release; and/or (f) be subrogated to all the rights, remedies, properties, funds, securities and receivables relating to Indemnitors' Contracts or contracts and have the right to offset losses or any Contract or Bond against proceeds, funds, or property due from another Contract, bond or contract.  Further, in the event of Default and upon demand Indemnitors shall direct that all payments, monies, and properties that are due or may become due on any Contract or contract be made payable to, and/or sent directly to, [Travelers], and shall issue whatever writing or notices as deemed necessary by [Travelers] to effectuate the default and/or termination of any Contract.

(Ex. A, ¶ 6).

21.     The Indemnity Agreement defines an event of "**Default**" as any of the following:

> (a) a declaration of Contract by any Obligee; (b) actual breach or abandonment of any Contract; (c) a breach of any provision of this Agreement; (d) failure to make payment of a properly due and owing bill in connection with any Contract; (e) [Travelers'] good faith establishment of a reserve; (f) improper diversion of Contract funds or any Indemnitor's assets to the detriment of Contract obligations; (g) any Indemnitor's becoming the subject of any proceeding or agreement of bankruptcy, receivership, insolvency, or creditor assignment, or actually becoming insolvent; (h) any Indemnitor's dying, becoming legally incompetent, being imprisoned, being convicted of a felony, or disappearing and being unable to be located; (i) any representation furnished to [Travelers] by or on behalf of any Indemnitor proving to have been materially false or misleading when made; and/or (j) any change in control or existence of any Indemnitor.  Change in control means the addition or departure of any person or entity having a ten percent (10%) or greater ownership interest in any Indemnitor.

(Ex. A, ¶ 1).

22.     Paragraph 9 of the Indemnity Agreement provides, in relevant part, that:

> All payments due or received for or on account of any Contract, whether or not in possession of any Indemnitor, shall be held in trust as trust funds by Indemnitors for the benefit and payment of all obligations for which [Travelers] as beneficiary may be liable under any Bond.  …

(Ex. A, ¶ 9).

23.     Paragraph 12 of the Indemnity Agreement provides, in relevant part, that:

> As security for their obligations hereunder, Indemnitors hereby grant to [Travelers] a security interest in the following properties, assets and rights of Indemnitors, wherever located, whether now owned or hereafter acquired or arising, and all proceeds and products thereof: all goods (including inventory, equipment and accessions thereto), instruments (including promissory notes), documents, accounts, chattel paper, deposit accounts, letter-of-credit rights, securities and all other investment property, supporting obligations, any Contract or contract rights or rights to the payment

of money, insurance claims and proceeds, and all general intangibles (the "Collateral"). This Agreement shall for all purposes constitute a Security Agreement for the benefit of [Travelers] in accordance with the Uniform Commercial Code ("UCC") and similar statutes. Indemnitors hereby irrevocably authorize [Travelers], without notice to any Indemnitor, in order to perfect the security interest granted herein, to file either: (a) this Agreement or a copy or other reproduction of this Agreement; or (b) any initial financing statements or amendments thereto that indicate the Collateral as all assets of Indemnitors or words of similar effect, …

(Ex. A, ¶ 12).

24.    Pursuant to its rights under paragraph 12 of the Indemnity Agreement, on February 13, 2024, Travelers filed UCC-1 Financing Statement No. 202400384272 against the Defendants with the Florida Secured Transaction Registry.

25.    Pursuant to its rights under paragraph 12 of the Indemnity Agreement, on February 13, 2024, Travelers filed UCC-1 Financing Statement No. 2024013569 against the Defendants with the District of Columbia Office of the Recorder of Deeds.

26.    Pursuant to its rights under paragraph 12 of the Indemnity Agreement, on February 16, 2024, Travelers filed UCC-1 Financing Statement No. 20240216208518 against the Defendants with the Virginia State Corporation Commission.

27.    Paragraph 1 of Indemnity Agreement also defines "**Contract**," "**Obligee**," and "**Property**" as:

> **Contract –** Any contract or obligation the performance of which is guaranteed or covered either in whole or in part under a Bond.
>
> …
>
> **Obligee** – Any person or entity in whose favor a Bond has been issued, and that person's or entity's successors and assigns.
>
> …
>
> **Property** – Indemnitors' rights, title and interest, where now held or hereafter acquired in: (a) any Contract or contract, including but

not limited to subcontracts let; (b) any and all sums due or which may hereafter become due under any Contract or contract, and all damage claims and proceeds related thereto; (c) all rights arising under any surety bonds or insurance policies; and (d) any and all accounts receivable, letters of credit, documents of title, bills of lading, warehouse receipts, machinery, plants, equipment, tools, materials, supplies, inventory, vehicles, hardware, software, machine tools, fixtures, office equipment, books, records, designs, licenses, patents, intellectual property, as-builts, construction drawings and documents, and all electronically stored information.

(Ex. A, ¶ 1).

## II.    Repaintex's Default and Travelers' Exposure Under Bonds.

28.    In reliance upon the Indemnity Agreement, Travelers, as surety, issued numerous payment and performance bonds (the "Bonds") on behalf of Repaintex for U.S. federal construction projects that the principals under the Bonds were to perform, including but not limited to, bonds for the following projects and obligees (collectively, "Bonded Projects"), and naming the United States of America as "obligee":

| Bond Number | Project |
| --- | --- |
| 107318597 | USAID Renovations Phase 5 and 6 at the Ronald Reagan Building located at 1300 Pennsylvania Avenue, Washington, DC 20006 |
| 107267775 | SCBI – Repair Visitor Parking |
| 107708863 | Smithsonian Fort Pierce Marine Station |
| 107530799 | NMIC MPAC Lab Renovation |

29.    Specifically, on or about September 20, 2020, Repaintex and the United States of America via its federal agency, the U.S. General Services Administration ("GSA" or "Obligee"), executed that certain GSA Contract No. 47PM0420C0005 (the "GSA Contract") for the USAID Renovations Phase 5 and 6 at the Ronald Reagan Building located at 1300 Pennsylvania Avenue, Washington, DC 20006 project (the "GSA Project").

30.    In connection with the GSA Contract, Repaintex was required to and did obtain payment (the "GSA Payment Bond") and performance bond (the "GSA Performance Bond")

numbers 107318597 (collectively, the "GSA Bonds"), naming Repaintex as principal and the GSA as obligee.  True and correct copies of the GSA Bonds are attached hereto as **Exhibit B** and are incorporated herein by reference.

31.     On January 10, 2024, the GSA sent a default and cure notice (the "Default & Cure Notice") to Repaintex and requesting a conference with Travelers concerning the GSA Project.  A true and correct copy of the Default & Cure Notice is attached hereto as **Exhibit C** and is incorporated herein by reference.

32.     On January 18, 2024, Travelers and the GSA held a conference concerning the Default Notice, and Repaintex, although invited, failed to attend the conference.

33.     On January 26, 2024, after Repaintex failed to cure and fully respond to the Default & Cure Notice, the GSA terminated the GSA Contract with Repaintex for default under FAR 49.402-3 (the "Termination Notice").  A true and correct copy of the Termination Notice is attached hereto as **Exhibit D** and is incorporated herein by reference.

34.     As a result, Travelers has been forced to investigate and defend claims, has been forced to settle claims pursuant to its bonded obligations, and has been made aware of other potential claims. To date, Travelers has issued payments to the following payment bond claimants under the GSA Payment Bond: (a) Leo A. Daly ($205,052.75); (b) Hatzel & Buehler ($24,000 phase 5; and $831,000 phase 6); and (c) Central Glass ($59,614).  A true and correct copy of Travelers' Payment Spreadsheet as of September 10, 2024 is attached hereto as **Exhibit E** and is incorporated herein by reference.

35.     In addition, after denying the GSA Payment Bond claim of Harvey Hottel in March 2023, and thereafter its revised claim in June 2024, Harvey Hottel filed suit against Travelers in July 2024, in United States District Court for the District of Columbia, demanding approximately

$565,000 relating to amounts allegedly owed for its Phase 5 scope of work. For this reason, Travelers has incurred additional legal fees relating to its defense of this action, which legal fees and costs are expected to increase. (*See* Exs. E and G).

36.    After the Obligee's termination of Repaintex's GSA Contract and simultaneous demand under the GSA Performance Bond, Travelers initially proposed that it tender over a new general contractor to the Obligee for completion of the remaining Repaintex work under the GSA Contract.

37.    Contracting on its own, the Obligee finalized a contract between itself and Whiting-Turner to complete Repaintex's scope of work under the GSA Contract on or about July 26, 2024, and issued a Notice to Proceed on or about August 13, 2024.

38.    Simultaneously, on or about July 26, 2024, Travelers, Whiting-Turner and the Obligee entered into a Tripartite Agreement (the "TA"), wherein Travelers was successful in mitigating over $1.5 Million in accrued liquidated damages stemming from Repaintex's defaults under the GSA Contract, and further clarifies Travelers' remaining exposure under the GSA Bonds relating to the Repaintex GSA Contract.

39.    Based upon the difference between Whiting-Turner's Final Contract Price of $8,850,000.00 and the Unpaid Balance of Repaintex's Contract Funds of $2,992,279.17, the amount of payment Travelers is required to make to the Obligee under the TA is $5,857,720.83, excluding, but not limited to, any potential exposure relating to Repaintex's GSA Contract for latent defects, design liability, as well as missing Warranty Documentation and Operations and Maintenance Manuals ("O&M") for Phase 5.

40.    The TA also requires Travelers issue two (2) settlement payments to the Obligee within specified timeframes, with the first $3,500,000.00 payment issued to the Obligee on or

about August 1, 2024, and the second payment of no more than $2,357,720.83 due within 90 days

after the Obligee issued its Notice to Proceed on or about August 13, 2024. (*See* Exs. E and G).

42.    In addition, Travelers has paid $112,142.29 in expenses to date, which expenses

include, but are not limited to, Travelers' investigative costs and expenses, as well as attorneys'

fees, which expenses continue to accrue and are expected to increase.  (*See* Exs. E and G).

42.    Based on the foregoing incurred and anticipated expenses, Travelers established a

total indemnity and expense reserve of $7,965,721.00 relating to this matter, which reserve may

increase over time.  (*See* Ex. G).

## III.    The Defendants Have Breached Their Obligations Under the Indemnity Agreement.

43.    On February 26, 2024, Travelers sent a Demand for Access to Books and Records

to, among others, the Defendants (the "Books & Records Demand") pursuant to their obligations

under the Indemnity Agreement.  A true and correct copy of the Books & Records Demand is

attached hereto and incorporated herein as **Exhibit F**.

44.    Defendants responded, in part, to the Books & Records Demand, however, their

response was incomplete.  As such, Travelers is unable to determine the Defendants' financial

condition.

45.    Further, due to the incomplete nature of the Defendants' response to the Books &

Records Demand, Travelers' investigation into the status of the GSA Project, including potential

bond claimants and the work that remained, was hampered.

46.    On September 13, 2024, Travelers sent the Defendants a Demand for Indemnity

and Posting of Collateral (the "Indemnity & Collateral Demand") requesting that the Defendants

indemnify Travelers and post collateral security in the amount of $7,654,529.87 by

September 20, 2024.  A true and correct copy of the Indemnity & Collateral Demand is attached

hereto and incorporated herein as **Exhibit G**.

47.    In addition, in its Indemnity & Collateral Demand, Travelers requested that the Defendants provide "written verification as to the current status" of the following three additional bonded projects (the "Additional Bonded Jobs") by September 20, 2024:

| Bond Number | Project |
|---|---|
| 107267775 | SCBI – Repair Visitor Parking |
| 107708863 | Smithsonian Fort Pierce Marine Station |
| 107530799 | NMIC MPAC Lab Renovation |

(Ex. G).

48.    To date, Defendants have failed to indemnify Travelers in any amount.

49.    To date, Defendants have failed to post collateral security with Travelers in any amount.

50.    As a result of Defendants' failure to post collateral as requested by Travelers in the Indemnity & Collateral Demand, Travelers is being forced to incur uncollateralized losses and has no security to protect itself from Defendants potentially dissipating or transferring assets to avoid their obligations to indemnify, exonerate, and hold Travelers harmless under the Indemnity Agreement.

51.    As a result of Defendants' failure to post collateral as requested by Travelers in the Indemnity & Collateral Demand, Travelers is at risk of becoming an unsecured creditor of Defendants, in contravention of the Indemnity Agreement.

52.    As a result of Defendants' failure to comply with Travelers' request in the Books & Records Demand for complete access to financial books and records, Travelers has no way of determining whether Defendants have improperly dissipated assets in contravention of the Indemnity Agreement to avoid their obligations to indemnify, exonerate, and hold Travelers harmless under the Indemnity Agreement.

53.     As a result of Defendants' failure to comply with Travelers' request in the Books & Records Demand for complete access to financial books and records, Travelers has no way of identifying Defendants' ownership interests in tangible property and real property that may have sufficient value to put Travelers into collateral owed under the Indemnity Agreement.

54.     Further, as a result of Defendants' failure to comply with Travelers' request in the Books & Records Demand for complete access to financial books and records and Travelers' request in the Indemnity & Collateral Demand for complete information as to the status of the Additional Bonded Projects, Travelers has no way of knowing what additional exposure it may have under the Additional Bonded Projects.

55.     Travelers has discharged and is discharging its obligations under the Bonds, has acted in conformity with the Indemnity Agreement, and has satisfied all conditions precedent to recovery in this action.

## COUNT ONE - BREACH OF CONTRACT
### (Money Damages)

56.     Travelers incorporates by reference Paragraphs 1 through 55 of this Complaint as though fully set forth herein.

57.     The Defendants owed the duties to Travelers set forth in the Indemnity Agreement, several of which are outlined elsewhere in this Complaint.

58.     Due to the Defendants' defaults under the GSA Bonds, the Indemnity Agreement, and on the GSA Project, Travelers, as surety, has been required to perform its obligations under the GSA Bonds issued for the GSA Project.

59.     In satisfying its obligations under the GSA Bonds and in accordance with the Indemnity Agreement, Travelers has made expenditures in good faith to investigate, settle, compromise, or otherwise satisfy claims, liabilities, and/or demands by subcontractors, suppliers,

and obligees.

60.     As a result of the Defendants' defaults under the GSA Bonds issued for the GSA Project and under the Indemnity Agreement, Travelers has incurred losses, costs, and damages arising from, but not limited to, investigating, defending and resolving actual and potential payment bond claims and performance bond demands made under the GSA Bonds.

61.     As a result of the Defendants' defaults under the GSA Bonds issued for the GSA Project and under the Indemnity Agreement, Travelers has incurred losses, costs, and damages pursuing its rights under the Indemnity Agreement.

62.     Under the Indemnity Agreement, Defendants are required, upon Travelers' demand to, among other things, reimburse Travelers for all "loss and expense of any kind or nature, including attorneys' and other professional fees," that have been sustained by Travelers as a result of the issuance of any Bonds and in connection with the Indemnity Agreement. (Ex. A, ¶¶ 1, 3).

63.     Under the Indemnity Agreement, Defendants also are obligated to exonerate and hold Travelers harmless from any liability which may be asserted against Travelers as a result of the issuance of any Bonds and in connection with the Indemnity Agreement. (Ex. A, ¶ 3).

64.     Under the Indemnity Agreement, Defendants are further required to provide Travelers with access to their books and records, "including but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information[.]" (Ex. A, ¶ 10).

65.     In violation of the terms of the Indemnity Agreement, the Defendants have:

   a.     failed and/or refused to indemnify, exonerate, or hold Travelers harmless from the losses, costs, fees and expenses thus far incurred in discharging its obligations under the GSA Bonds;

      b.      failed and/or refused to post the collateral requested to cover the reserve set by Travelers as a result of pending and potential claims against the GSA Bonds; and

      c.      failed and/or refused to allow Travelers complete access to their books, records and accounts.

66.     Pursuant to the Indemnity Agreement, Travelers is entitled to recover from the Defendants all costs and expenses, including attorneys' fees, incurred by Travelers in any action to enforce any of the covenants or conditions of the Indemnity Agreement.

67.     Travelers has been damaged by the Defendants breaches of the Indemnity Agreement in an amount not less than $7,654,529.87, which will continue to increase due to additional and anticipated claims against the Bonds, as well as legal fees, costs, and expenses, interest from the dates of Travelers' payments (which is recoverable under the Indemnity Agreement and applicable law), and any other recoverable damages to which Travelers may be entitled.

68.     Travelers is likely to continue to incur losses, costs and damages resolving pending and future claims against the bonds.

69.     Travelers is also likely to continue to incur losses, costs and damages in pursuit of its rights under the Indemnity Agreement, including the costs and expenses of this action, which are recoverable from Defendants under the Indemnity Agreement.

WHEREFORE, Plaintiff Travelers respectfully requests that this Court find Defendants jointly and severally liable to Plaintiff in an amount to be proven at trial, but not less than $7,654,529.87, plus attorneys' fees, legal costs and expenses, interest, any other additional losses and expenses incurred as a result of Defendants' breaches of the Indemnity Agreement, and any

other further relief this Court deems just and proper.

## COUNT TWO – BREACH OF CONTRACT
### (Specific Performance)

70.    Travelers incorporates by reference Paragraphs 1 through 69 of this Complaint as though fully set forth herein.

71.    To date and as detailed above, Defendants have failed to comply with their obligations under the Indemnity Agreement in that Defendants have refused to deposit collateral security to exonerate, hold harmless and indemnify and keep indemnified Travelers against all pending and future losses, claims, liabilities, damages and demands in connection with the Bonds and the Indemnity Agreement.

72.    To date and as detailed above, Defendants have failed to comply with their obligations under the Indemnity Agreement in that Defendants have refused to provide: (i) complete access to their financial books and records; (ii) a complete accounting of their current assets; and (iii) a complete accounting of the status of the GSA Project and the Additional Bonded Projects.

73.    As a result of Travelers' issuance of the Bonds in connection with the Indemnity Agreement, Travelers has incurred and, based upon a good faith belief is likely to continue to incur, substantial costs and damages, arising from, among other things, (i) investigating, defending, and resolving actual and potential payment and performance bond claims and demands; (ii) completing work on the GSA Project; and (iii) pursuing its rights under the Indemnity Agreement.

74.    To date, Travelers has set a reserve in the amount of $7,965,721.00 to cover pending and potential claims related to the GSA Bonds it issued for the Defendants, which amount is subject to increase. (*See* Ex. G).

75.     As a result of Defendants' failure to satisfy Travelers' demand for collateral, failure to provide complete access to their books and records, and failure to provide a complete accounting of the status of the GSA Project and the Additional Bonded Projects, there is reason to be concerned that Defendants will not, or cannot, post sufficient collateral to exonerate, hold harmless, indemnify, and keep indemnified Travelers under the terms and conditions of the Indemnity Agreement without relief from the Court.

76.     Travelers is suffering irreparable harm for which there is no adequate remedy at law as a result of Defendants' failure to post collateral and to exonerate, hold harmless, indemnify, and keep indemnified Travelers under the terms and conditions of the Indemnity Agreement.

77.     Travelers also is suffering irreparable harm for which it has no adequate remedy at law due to Defendants' failure to provide (i) access to their books and records; (ii) a complete accounting of their assets; and (iii) a complete accounting of any assets pledged to Travelers and held in trust under the Indemnity Agreement, but subsequently transferred.

78.     Under the Indemnity Agreement, the Defendants agreed that Travelers "would suffer irreparable damage and would not have an adequate remedy at law if" the Defendants fail to post collateral security with Travelers upon demand.  (Ex. A, ¶ 5).

WHEREFORE, Travelers requests relief in the form of a judgment in its favor and against Defendants jointly and severally ordering Defendants to do following:

(A)     Remit payment to Travelers in accordance with the Indemnity Agreement in an amount to be proved at trial, but not less than $7,654,529.87, plus expert and attorney's fees, costs, expenses and interest, as reimbursement for costs, losses and damages that Travelers incurred by reason of the Bonds and the Bonded Projects;

(B)     In accordance with the Indemnity Agreement, place Travelers in funds by money,

property, liens or security interests in property as determined by Travelers to be sufficient security to cover anticipated obligations and exposure arising out of the Bonds and the Bonded Projects, in an amount to be determined at trial, but to date reasonably estimated to be at least $7,654,529.87 as evidenced by Travelers' Indemnity & Collateral Demand;

(C)    In accordance with the Indemnity Agreement, discharge all debts or liabilities incurred or likely to be incurred by Travelers as a result of its issuance of the Bonds under the Indemnity Agreement, in an amount to be determined at trial, but to date reasonably estimated to be at least $7,965,721.00 as evidenced by Travelers' reserve;

(D)    Render Travelers immediate, full and complete access to books, records and accounts of all assets owned by any of them or in which any of them have an expectation or other interest, an accounting of all assets and any outstanding liabilities and payment obligations, the present location of their assets, and all other documents and information previously requested in the Books & Records Demand and the Indemnity & Collateral Demand;

(E)    In accordance with the Indemnity Agreement, pay Travelers its costs, losses and damages of whatsoever kind and nature, including legal costs and attorney's fees, incurred in enforcing their rights under the Indemnity Agreement, and granting Travelers such further relief as this Court deems just and proper under the circumstances; as well as an order

(F)    Enjoining and restraining Defendants from selling, transferring, or otherwise disposing of or liening their assets pledged to Travelers and/or held in trust under the Indemnity Agreement unless and until Travelers shall be placed in funds as prayed for in paragraphs (A) and (B) above, and all debts and liabilities as set forth in paragraph (C) above have been discharged, or as later amended due to pending and potential additional claims against the Bonds.

## COUNT III: *QUIA TIMET* AND INJUNCTIVE RELIEF

79.    Travelers incorporates by reference Paragraphs 1 through 78 of this Complaint as though fully set forth herein.

80.    By the express provisions of the Indemnity Agreement and by virtue of the equitable doctrines of exoneration and *quia timet*, Defendants are required to post collateral security, and Travelers is entitled to be placed in funds or other collateral security upon demand, for all losses and expenses to be incurred as a consequence of its issuance of the Bonds in connection with the Indemnity Agreement.

81.    Unless temporary and continuing injunctive relief is granted, Travelers will not be adequately secured for any obligations that have arisen and may arise hereafter under the Bonds and as a result of Defendants' breaches of the Indemnity Agreement, all to the prejudice and irreparable harm of Travelers.

82.    Unless temporary and continuing injunctive relief is granted, Defendants may sell, transfer, dispose of, lien, secrete, or otherwise divert its assets from being used to discharge Defendants' obligations to exonerate and indemnify Travelers, all to the prejudice and irreparable harm of Travelers.

83.    Unless temporary and continuing injunctive relief is granted, Travelers will suffer irreparable harm for which it has no adequate remedy at law due to Defendants' failure to provide (i) complete access to their books and records; (ii) a complete accounting of their assets; and (iii) a complete accounting as to the status of the Bonded Projects.

84.    Under the Indemnity Agreement, the Defendants agreed that Travelers "would suffer irreparable damage and would not have an adequate remedy at law if" the Defendants fail to post collateral security with Travelers upon demand.  (Ex. A, ¶ 5).

85.    As a proximate result of Defendants' conduct, Travelers has been, or will be, irreparably damaged so long as Defendants are able to avoid their obligations to Travelers under the Indemnity Agreement.  Travelers anticipates losses and exposure to be $7,965,721.00, as evidenced by its reserve.  (*See* Ex. G).

WHEREFORE, Travelers respectfully prays that the Court grant the following temporary, preliminary and permanent injunctive relief jointly and severally against Defendants by issuing an order:

(A)    Requiring Defendants in accordance with the Indemnity Agreement to place Travelers in funds by money, property, liens or security interests in property as determined by Travelers to be sufficient security to cover anticipated obligations and exposure arising out of the Bonds and the Bonded Projects, in an amount to be determined at trial, but to date reasonably estimated to be at least $7,654,529.87 as evidenced by Travelers' Indemnity & Collateral Demand, or, in the alternative, an order to deposit such funds for such purpose in the registry of the Court;

(B)    Rendering Travelers immediate, full and complete access to books, records and accounts of all assets owned by any of them or in which any of them have an expectation or other interest, an accounting of any outstanding liabilities and payment obligations, the present location of their assets and all other documents and information previously requested in the Books & Records Demand, including but not limited to, a complete accounting of any transfers, gifts or sales of any assets pledged to Travelers and/or held in trust under the Indemnity Agreement;

(C)    In accordance with the Indemnity Agreement, enjoining and restraining Defendants from selling, transferring, or otherwise disposing of or liening their assets and property pledged to Travelers and/or held in trust under the Indemnity Agreement unless and until Travelers shall be placed in funds as prayed for in paragraph (A) above, or as later amended due to pending and

potential additional claims against the Bonds, and all debts and liabilities under the Bonds and the Indemnity Agreements have been discharged; and

(D)    Requiring Defendants to pay Travelers' costs and attorney's fees and granting Travelers such further relief as the Court deems just and proper under the circumstances.

DATED:        October 25, 2024            Respectfully submitted,

*/s/ Jennifer L. Kneeland*
Jennifer L. Kneeland (VSB No. 71187)
Marguerite Lee DeVoll (VSB No. 93474)
WATT, TIEDER, HOFFAR & FITZGERALD, LLP
1765 Greensboro Station Place, Suite 1000
McLean, Virginia 22102
(703) 749-1000
(703) 893-8029 (fax)
jkneeland@watttieder.com
mdevoll@watttieder.com

*Counsel for Travelers Casualty & Surety Company of America*