# EXHIBIT G

**TRAVELERS**

P.O. Box 2989
Hartford, CT 06104-2989

Kelly Engel
Claim Executive
Bond & Specialty Insurance Claim
Phone: (443) 353-2095
Fax: (888) 460-6622
Email: KENGEL@travelers.com

September 13, 2024

**<u>Via Federal Express; Email; and Certified Mail/Return Receipt Requested</u>**

Repaintex Company                      Mr. Carlos A. Acosta
Attn: Mr. Carlos Acosta                12911 Oleander Drive
116-H Edwards Ferry Rd. NE             North Miami, Florida 33181
Leesburg, Virginia 201765

Ms. Angela P. Acosta
17111 Biscayne Blvd., Unit 2205
Aventura, Florida 33160

Re:    **<u>DEMAND FOR INDEMNITY AND POSTING OF COLLATERAL</u>**

|  |  |
|---|---|
| Surety: | Travelers Casualty and Surety Company of America |
| Bond: | Performance & Payment Bond Nos. 107318597 |
| Principal: | Repaintex Company |
| Contract: | GSA Contract No. 47PM0420C0005 dated September 20, 2020 by and between Repaintex Company and the U.S. General Services Administration |
| Project: | USAID Renovations Phase 5 and 6 at the Ronald Reagan Building located at 1300 Pennsylvania Avenue, Washington, DC 20006 |

Dear Indemnitors:

Travelers Casualty and Surety Company of America ("Travelers") is the surety on Payment and Performance Bonds No. 107318597 (the "Bonds") issued for the above-referenced Project naming Repaintex Company as principal ("Principal" or "Repaintex") and the United States of America as obligee ("Obligee").  The purpose of this letter is to supplement Travelers' prior correspondence to you, and to make demand upon the Indemnitors (defined below) to indemnify Travelers and post collateral security in the amount of $7,654,529.87.

Repaintex, Carlos A. Acosta and Angela P. Acosta executed and agreed to the terms contained in the General Agreement of Indemnity ("GAI" or "Indemnity Agreement") dated October 10, 2015.  The GAI defines "Indemnitors" broadly to include:

Undersigned [i.e., Repaintex, Mr. Acosta, and Ms. Acosta], all new indemnitors added to this Agreement by rider, their present and future direct and indirect subsidiaries, affiliates,

**Travelers**

September 13, 2024
Page 2

and parent companies, and all of their successors and
assigns, and any joint venture, co-venture, consortium,
partnership, trust, association, limited liability company or
other legal entity in which one or more of them are involved,
whether in existence now or formed or acquired hereafter,
and any entity that obtains Bonds from [Travelers] at the
request of any of the aforementioned parties, or any
combination of the above.

*See* GAI, ¶ 1. Consequently, Repaintex, Mr. Acosta, and Ms. Acosta are "Indemnitors" by
virtue of executing the GAI and are all referred to herein as "Indemnitors."

In the Indemnity Agreement, each of the Indemnitors agreed, jointly and severally,[1]
to satisfy certain obligations, including the obligations to: (i) indemnify, exonerate, and
hold Travelers harmless from any "Loss" incurred in connection with the Bonds or the GAI
as well as all of Travelers' losses, fees, costs and expenses incurred to enforce the GAI;
and (ii) to fully collateralize Travelers for incurred or anticipated "Losses" in connection
with issuance of the Bonds. Specifically, Paragraph 3 of the GAI provides:

Indemnitors shall exonerate, indemnify and save [Travelers]
harmless from and against all Loss. An itemized, sworn
statement by an employee of [Travelers], or other evidence
of payment, shall be prima facie evidence of the propriety,
amount and existence of Indemnitors' liability. Amounts
due to [Travelers] shall be payable upon demand.

With regard to the Indemnitors' duty to exonerate and hold Travelers harmless by
posting collateral, Paragraph 5 of the GAI provides:

Indemnitors agree to deposit with [Travelers], upon demand,
an amount as determined by [Travelers] sufficient to
discharge any Loss or anticipated Loss. Indemnitors further
agree to deposit with [Travelers], upon demand, an amount
equal to the value of any assets or Contract funds improperly
diverted by any Indemnitors. Sums deposited with
[Travelers] pursuant to this paragraph may be used by
[Travelers] to pay such claim or be held by [Travelers] as
collateral security against any Loss or unpaid premium on
any Bond. [Travelers] shall have no duty to invest or provide
interest on the deposit. *Indemnitors agree that [Travelers]
would suffer irreparable damage and would not have an*

---

[1] Paragraph 7 of the GAI, entitled "Joint and Several Liability," provides: "The obligations of
Indemnitors hereunder are joint and several."

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **Our toll-free number is 800-842-8496** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
20194803.1 104228.00017

Rev 11/13/16                                                                                              C-07

**Travelers**

September 13, 2024
Page 3

> *adequate remedy at law if Indemnitors fail to comply with*
> *the provisions of this paragraph.*

GAI, ¶¶ 3, 5 (emphasis in italics added).  Thus, the indemnity/collateral obligations of Indemnitors extend to any "Loss" or anticipated "Loss," *e.g.*, "Loss" that Travelers anticipates it will incur as a result of any and all loss and expense under the Bonds.[2]

The Indemnity Agreement was executed as consideration for Travelers issuing surety bonds on behalf of the Indemnitors.  Travelers subsequently issued bonds for several projects performed by various Indemnitors, including but not limited to the Bonds issued on behalf of Repaintex for the above-referenced Project.  Repaintex, however, was unable to complete the work for the Project for which Travelers issued the Bonds.

Specifically, on January 10, 2024, the GSA sent a default and cure notice (the "Default & Cure Notice") to Repaintex and requested a conference with Travelers.  On January 18, 2024, Travelers and the GSA held a conference concerning the Default & Cure Notice, and Repaintex, although invited, failed to attend the conference. On January 26, 2024, after Repaintex failed to cure and fully respond to the Default & Cure Notice, the GSA terminated the Contract with Repaintex for default under FAR 49.402-3 (the "Termination Notice").

As a result, Travelers has been forced to investigate and defend claims,  forced to settle claims pursuant to its bonded obligations, and made aware of other potential claims. To date, Travelers has issued payments to the following payment bond claimants: 1) Leo A. Daly ($205,052.75); Hatzel & Buehler ($24,000 phase 5; and $831,000 phase 6); Central Glass ($59,614), as further identified on the attached Travelers Payment Spreadsheet.

In addition, after denying the payment bond claim of Harvey Hottel in March 2023, and thereafter its revised claim in June 2024, Harvey Hottel filed suit against Travelers in July 2024, in United States District Court for the District of Columbia, demanding approximately $565,000 relating to amounts allegedly owed for its Phase 5 scope of work. For this reason, Travelers has incurred additional legal fees relating to its defense of this action, which legal fees and costs are expected to increase.

In addition, after the Obligee's termination of Repaintex's Contract and simultaneous demand under the performance bond, Travelers initially proposed that it tender over a new general contractor to the Obligee for completion of the remaining

---

[2] "Loss" is specifically defined as "All loss and expense of any kind or nature, including attorneys' and other professional fees, which [Travelers] incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of [Travelers']: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate."

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **Our toll-free number is 800-842-8496** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
20194803.1 104228.00017

Rev 11/13/16                                                                                                C-07

**Travelers**

September 13, 2024
Page 4

Repaintex work under the Contract. Contracting on its own, the Obligee finalized a contract between itself and Whiting-Turner to complete Repaintex's scope of work under the Contract on or about July 26, 2024, and issued a Notice to Proceed on or about August 13, 2024.

Simultaneously, on or about July 26, 2024, Travelers, Whiting-Turner and the Obligee entered into a Tripartite Agreement (the "TA"), wherein Travelers was successful in mitigating over $1.5 Million in accrued liquidated damages stemming from Repaintex's defaults under the Contract, and further clarifies Travelers' remaining exposure under the Bonds relating to the Repaintex Contract. Based upon the difference between Whiting-Turner's Final Contract Price of $8,850,000.00 and the Unpaid Balance of Repaintex's Contract Funds of $2,992,279.17, the amount of payment Travelers is required to make to the Obligee under the TA is $5,857,720.83, excluding, but not limited to, any potential exposure relating to Repaintex's Contract for latent defects, design liability, as well as missing Warranty Documentation and Operations and Maintenance Manuals ("O&M") for Phase 5. The TA also requires that Travelers issue two (2) settlement payments to the Obligee within specified timeframes, with the first $3,500,000.00 payment issued to the Obligee on or about August 1, 2024, and the second payment of no more than $2,357,720.83 due within 90 days after the Obligee issued its Notice to Proceed on or about August 13, 2024.

In addition, Travelers has paid $112,142.29 in expenses to date, which expenses include, but are not limited to, Travelers' investigative costs and expenses, as well as attorneys' fees, which expenses continue to accrue and are expected to increase.

For all of the above reasons, Travelers established a total indemnity and expense reserve of $7,965,721.00 relating to this matter, which reserve may or may not increase over time, and Travelers continues to reserve all of its rights in this regard.

In the interim, please be advised that Travelers' current Loss consists of at least $4,731,809.04 relating to: 1) payment bond claim settlements made to date; 2) expenses incurred to date; 3) Travelers first $3.5 Million TA settlement payment to the Obligee; plus 4) an additional $2,357,720.83 relating to the anticipated second settlement payment due to the Obligee under the TA; and 5) approximately $565,000 as a reserve related to allegations made by Harvey Hottel in connection with Phase 5 scope of work, for a current anticipated Loss in excess of **$7,654,529.87**, not including interest, pending or future claims, attorneys' and consultants' fees that have and/or may be incurred in resolving any and all claims that exist or that may be asserted against the Bonds and any other bonds issued by Travelers on behalf of the Indemnitors, and/or attorneys' fees that Travelers has incurred, and will in the future incur, to protect its rights and enforce the terms of the Indemnity Agreement. Given that Travelers has issued other bonds on behalf of one or more of the Indemnitors to which the status is currently unknown, Travelers must also reserve all of its rights with respect to making future collateral and indemnity demands pertaining to any anticipated Loss under the Bonds or any other bonds issued on behalf of the Indemnitors.

**Travelers**

September 13, 2024
Page 5

To that end, based upon the Work in Process schedule Repaintex provided to Travelers as of December 31, 2023 (Repaintex's "WIP"), it appears Repaintex has identified three (3) additional Travelers bonded projects acknowledging a combined total remaining amount to bill of approximately $1.6 Million as of that date, as further summarized below:

- SCBI – Repair Pavement Visitor Parking; Bond 107267775; completion date of September 1, 2023 with $1,000 left to bill;

- Smithsonian Fort Pierce Marine Station ; Bond 107708863 ; completion date of 12/23/24 with $962,017.75 left to bill; and

- NMIC MPAC Lab Renovation; Bond 107530799; completion date of October 1, 2024 with $638,647.09 left to bill.

As such, Travelers requests written verification as to the current status of each of these projects; including documentation in support thereof, as well as copies of any and all certificates of substantial/final completion, if applicable.

In the interim and pursuant to the terms of the Indemnity Agreement, Travelers **HEREBY DEMANDS** that:

**Within seven (7) days from the date of this letter, Indemnitors, jointly and severally, fulfill their obligation to deposits funds or other collateral in an acceptable format to Travelers and in favor of Travelers in the amount of** $7,654,529.87. This amount shall be held and used, at the sole option of Travelers, to reimburse Travelers for its Losses and/or anticipated Losses, including expenses incurred and/or to be held as collateral security for Indemnitors' obligations under the GAI for anticipated Losses. Of course, Travelers reserves the right to increase this collateral demand at its sole discretion pursuant to the GAI. Cash is the preferred form of collateral and should be deposited by certified check or money order made payable to "Travelers Casualty and Surety Company of America" and sent to the attention of Jennifer L. Kneeland, Watt, Tieder, Hoffar & Fitzgerald, LLP, 1765 Greensboro Station Place, Suite 1000, McLean, Virginia 22102. To the extent the Indemnitors can demonstrate to Travelers' satisfaction, and in its sole discretion, why cash in the amount of above cannot be transferred within the next seven (7) days, Travelers will agree to receive a clean irrevocable letter of credit in Travelers' name and with acceptable terms, or a payable on demand Certificate of Deposit in Travelers' name and delivered to Travelers, or other collateral security acceptable to Travelers.[3]

In the event that Travelers does not timely receive the indemnity assurances and deposit of collateral as set forth above, Travelers will have no choice but to immediately

---

[3] With respect to any request that Travelers accept a security interest in, or assignment of, real or personal property, Travelers will require the Indemnitors to demonstrate the value of the property, whether or not the property is subject to any prior liens, proof that the taxes are current, proof that Travelers is listed as an additional insured on relevant insurance policies, and the current value of any prior liens, before Travelers will consider a security interest as collateral.

**Travelers**

September 13, 2024
Page 6

pursue all legal rights and remedies.  Please be advised that the Indemnitors are responsible for the legal costs and expenses that Travelers incurs to enforce the obligations under the Indemnity Agreement.

Please be further advised that, notwithstanding the foregoing demands, Travelers' final losses and expenses are unknown at this time, and therefore it is impossible for Travelers to determine its overall exposure under the Bonds and the Indemnity Agreement at this time.  Therefore, Travelers may make additional demand(s) for indemnity and collateral to cover any additional anticipated Loss or claims made against the Bonds, any other bonds, and/or other Loss incurred by Travelers.  As such, Indemnitors will remain under a continuing obligation to satisfy any and all Loss which may be incurred and/or anticipated by Travelers and to post such additional collateral as may be required by Travelers from time to time.

This letter is written under a complete reservation of all rights.  Nothing herein shall be construed as a waiver, release, estoppel or modification of any rights or defenses, at law or in equity, available to Travelers under contract, general agreement of indemnity, by statute or at common law.

We look forward to having Indemnitors timely satisfy their obligations under the GAI.

Sincerely,

Kelly Engel